## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

                    Plaintiff,          Case No. _____

      v.

                                   **COMPLAINT**

ESTATE OF ROBERT E. PROEBER
1812 Wind Dale Road
Racine, WI 53402,

LARRY PROEBER
1812 Wind Dale Road
Racine, WI 53402,

                    Defendants.

Comes now the plaintiff, the United States of America, by Matthew D. Krueger, United States Attorney for the Eastern District of Wisconsin, and Michael A. Carter, Assistant United States Attorney for said District, and for its cause of action alleges that:

1.      This is a civil action brought by the United States of America under 28 U.S.C. §1345.

2.      The United States seeks to foreclose a reverse mortgage between Robert E. Proeber and the United States Department of Housing & Urban Development ("HUD").

3.      Robert E. Proeber executed and delivered to Wells Fargo Bank N.A. a promissory note dated October 24, 2005, attached hereto as Exhibit A.

4.      To secure said note, Robert E. Proeber executed and delivered to Wells Fargo Bank N.A., its successors and assigns, an Adjustable Rate Home Equity Conversion Mortgage dated October 24, 2005, attached as Exhibit B.

5.      On May 29, 2013, Wells Fargo Bank N.A. assigned its interest in the Note and

Mortgage to the Secretary of Housing and Urban Development, a copy of said assignment is hereto annexed as Exhibit C.

6.     Robert E. Proeber also executed and delivered to the Secretary of Housing and Urban Development a second promissory note dated October 24, 2005 and a second Adjustable Rate Home Equity Conversion Mortgage dated October 24, 2005 to secure the reverse mortgage. Copies of the second note and mortgage are attached as Exhibits D and E.

7.     Robert E. Proeber passed away on March 6, 2014.   A copy of the death certificate is hereto annexed as Exhibit F.

8.     No action has been filed to probate the Estate of Robert E. Proeber.

9.     Under the terms of the above notes and mortgages, default occurred on the date of death of Robert E. Proeber.   Consistent with said terms and default, full and immediate payment is due and demanded.

10.    The Estate of Robert E. Proeber owes the Plaintiff under the provisions of the note, and mortgages a balance of $178,963.11, as of January 17, 2018.   A Statement of Account is attached hereto as Exhibit G.

11.    Plaintiff has made the following payments as permitted by the provisions of said mortgages which have become a part of the mortgage indebtedness.

| | |
|---|---|
| Service fee (monthly fee) | $ 4,440.00 |
| MIP (insurance) | $11,611.69 |

12.    Upon information and belief, Larry Proeber is currently residing at the property. Any interest he may have in the mortgaged premises is junior and subordinate to the interest of the plaintiff.

WHEREFORE, plaintiff prays that an accounting be taken under the direction of this Court of what is due for principal and interest on the notes and mortgages and that a decree be

entered as follows:

(a)     That the defendant pay to plaintiff the principal of $120,093.97 and interest of

$42,817.45, together with interest from January 17, 2018 at the rate of $17.75 per day computed

as provided in the notes and mortgages up to the date on which the decree is entered, plus

interest thereafter according to law, costs, disbursements, and expenses;

(b)     Or in default of such payment, that all legal right, title, and interest that defendant

has in the property described in said mortgages be sold at public sale in accordance with 28

U.S.C. §§2001-2003, inclusive, and that the amounts due to plaintiff be paid out of the proceeds

of the sale pursuant to the lien priority of its mortgages;

(c)     That the defendants and all persons claiming or who may claim by, from, or under

them be absolutely barred and foreclosed from all rights and equity of redemption in the

property,

(d)     That if the proceeds of the sale exceed the sum of money to be paid to plaintiff,

any such excess be deposited with the Clerk of this Court subject to further orders of the Court;

(e)     For such other and further relief as is just.

Dated at Milwaukee, Wisconsin this 2nd day of May, 2018.

MATTHEW D. KRUEGER
United States Attorney

By      s/Michael A. Carter

MICHAEL A. CARTER
Assistant United States Attorney
Wisconsin State Bar No. 1090041
Office of the United States Attorney
517 East Wisconsin Ave., Room 530
Milwaukee, Wisconsin   53202
Telephone:   (414) 297-1700
Fax: 414-297-4394
Michael.A.Carter@usdoj.gov

# ADJUSTABLE RATE NOTE
## (HOME EQUITY CONVERSION)

FHA Case No.   581-2705571-952/255
0060006046

OCTOBER 24        , 2005

1812 WIND DALE ROAD, RACINE, WISCONSIN 53402
[Property Address]

## 1. DEFINITIONS

"Borrower" means each person signing at the end of this Note. "Lender" means
**WELLS FARGO BANK, N. A.**

and its successors and assigns. "Secretary" means the Secretary of Housing and Urban Development or his or her authorized representatives.

## 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for amounts to be advanced by Lender to or for the benefit of Borrower under the terms of a Home Equity Conversion Loan Agreement dated **OCTOBER 24, 2005**        ("Loan Agreement"), Borrower promises to pay to the order of Lender a principal amount equal to the sum of all Loan Advances made under the Loan Agreement with interest. All amounts advanced by Lender, plus interest, if not paid earlier, are due and payable on **APRIL 28**        **,2077**        . Interest will be charged on unpaid principal at the rate of **FIVE AND 640/1000**        percent (        5.6400 %) per year until the full amount of principal has been paid. The interest rate may change in accordance with Paragraph 5 of this Note. Accrued interest shall be added to the principal balance as a Loan Advance at the end of each month. Solely for the purpose of calculating interest, a payment received by Lender within 30 days prior to or after the date it is due will be deemed to be paid on such due date.

## 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." That Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT

(A) Time

Borrower shall pay all outstanding principal and accrued interest to Lender upon receipt of a notice by Lender requiring immediate payment in full, as provided in Paragraph 7 of this Note.

(B) Place

Payment shall be made at **WELLS FARGO BANK, N. A.**,
**P. O. BOX 26901,**
**GREENSBORO, NORTH CAROLINA 27419-6901**
**1-800-472-3209**        , or any such other place as Lender
may designate in writing by notice to Borrower.

(C) Limitation of Liability

Borrower shall have no personal liability for payment of the debt. Lender shall enforce the debt only through sale of the Property covered by the Security Instrument ("Property"). If this Note is assigned to the Secretary, the Borrower shall not be liable for any difference between the mortgage insurance benefits paid to Lender and the outstanding indebtedness, including accrued interest, owed by Borrower at the time of the assignment.

## 5. INTEREST RATE CHANGES

(A) Change Date

The interest rate may change on the first day of **JANUARY, 2006**        , and on ☐ that day of each succeeding year ☒ the first day of each succeeding month. "Change Date" means each date on which the interest rate could change.

(B) The Index

Beginning with the first Change Date, the interest rate will be based on an Index. "Index" means the weekly average yield on United States Treasury Securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. "Current Index" means the most recent Index figure available 30 days before the Change Date. If the Index (as defined above) is no longer available, Lender will use as a new Index any index prescribed by the Secretary. Lender will give Borrower notice of the new Index.

(C) Calculation of Interest Rate Changes

Before each Change Date, Lender will calculate a new interest rate by adding a margin of **ONE AND 500/1000** percentage points (        1.50000 %) to the Current Index. Subject to the limits stated in Paragraph 5(D) of this Note, this amount will be the new interest rate until the next Change Date.

(D) Limits on Interest Rate Changes

☐ The interest rate will never increase or decrease by more than two percentage points (2.0%) on any single Change Date. The interest rate will never be more than five percentage points (5.0%) higher or lower than the initial interest rate stated in Paragraph 2 of this Note.

☒ The interest rate will never increase above **FIFTEEN AND 640/1000**        percent (        15.6400 %).

(E) Notice of Changes

Lender will give notice to Borrower of any change in the interest rate. The notice must be given at least 25 days before the new interest rate takes effect, and must set forth (i) the date of the notice, (ii) the Change Date, (iii) the old interest rate, (iv) the new interest rate, (v) the Current Index and the date it was published, (vi) the method of calculating the adjusted interest rate, and (vii) any other information which may be required by law from time to time.

**Exhibit A**

**(F) Effective Date of Changes**

A new interest rate calculated in accordance with paragraphs 5(C) and 5(D) of this Note will become effective on the Change Date, unless the Change Date occurs less than 25 days after Lender has given the required notice. If the interest rate calculated in accordance with Paragraphs 5(C) and 5(D) of this Note decreased, but Lender failed to give timely notice of the decrease and applied a higher rate than the rate which should have been stated in a timely notice, then Lender shall recalculate the principal balance owed under this Note so it does not reflect any excessive interest.

**6. BORROWER'S RIGHT TO PREPAY**

A Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty. Any amount of debt prepaid will first be applied to reduce the principal balance of the Second Note described in Paragraph 11 of this Note and then to reduce the principal balance of this Note.

All prepayments of the principal balance shall be applied by Lender as follows:

First, to that portion of the principal balance representing aggregate payments for mortgage insurance premiums;

Second, to that portion of the principal balance representing aggregate payments for servicing fees;

Third, to that portion of the principal balance representing accrued interest due under the Note; and

Fourth, to the remaining portion of the principal balance. A Borrower may specify whether a prepayment is to be credited to that portion of the principal balance representing monthly payments or the line of credit. If Borrower does not designate which portion of the principal balance is to be prepaid, Lender shall apply any partial prepayments to an existing line of credit or create a new line of credit.

**7. IMMEDIATE PAYMENT IN FULL**

**(A) Death or Sale**

Lender may require immediate payment in full of all outstanding principal and accrued interest if:

(i) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower, or

(ii) All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains title to the Property in fee simple or retains a leasehold under a lease for less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower or retains a life estate (or retaining a beneficial interest in a trust with such an interest in the Property).

**(B) Other Grounds**

Lender may require immediate payment in full of all outstanding principal and accrued interest, upon approval by an authorized representative of the Secretary, if:

(i) The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower;

(ii) For a period of longer than 12 consecutive months, a Borrower fails to physically occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or

(iii) An obligation of the Borrower under the Security Instrument is not performed.

**(C) Payment of Costs and Expenses**

If Lender has required immediate payment in full as described above, the debt enforced through sale of the Property may include costs and expenses, including reasonable and customary attorneys' fees, associated with enforcement of this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**(D) Trusts**

Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interests in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph. A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph.

**8. WAIVERS**

Borrower waives the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**9. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the Property Address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

**10. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note only through sale of the Property.

**11. RELATIONSHIP TO SECOND NOTE**

**(A) Second Note**

Because Borrower will be required to repay amounts which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to grant a Second Note to the Secretary.

**(B) Relationship of Secretary Payments to this Note**

Payments made by the Secretary shall not be included in the debt due under this Note unless:

(i) This Note is assigned to the Secretary; or

(ii) The Secretary accepts reimbursements by the Lender for all payments made by the Secretary.

If the circumstances described in (i) or (ii) occur, then all payments by the Secretary, including interest on the payments, shall be included in the debt.

3IXA : 06/97

Page 2 of 3

**(C) Effect on Borrower**

Where there is no assignment or reimbursement as described in (B)(i) or (ii), and the Secretary makes payments to Borrower, then Borrower shall not:

    (i)  Be required to pay amounts owed under this Note until the Secretary has required payment in full of all outstanding principal and accrued interest under the Second Note held by the Secretary, notwithstanding anything to the contrary in Paragraph 7 of this Note; or

    (ii)  Be obligated to pay interest or shared appreciation under this Note at any time, whether accrued before or after the payments by the Secretary, and whether or not accrued interest has been included in the principal balance of this Note, notwithstanding anything to the contrary in Paragraphs 2 or 5 of this Note or any Allonge to this Note.

**12. SHARED APPRECIATION**

If Borrower has executed a Shared Appreciation Allonge, the covenants of the Allonge shall be incorporated into and supplement the covenants of this Note as if the Allonge were a part of this Note.

**13. GOVERNING LAW**

All interest, fees and other amounts charged or accruing in connection with this Note which are considered "interest" within the meaning of Section 85 of the National Bank Act (12 USC § 85; 12 CFR 7.4001 (a)) shall be governed by and interpreted under South Dakota law. In all other respects, this Note and all related documents, as well as the rights, remedies, and duties of the Bank and the borrower(s), shall be governed and interpreted by federal law with respect to national banks and, to the extent not preempted by federal law, the consumer protection laws of the state in which the real estate is located, except that Texas Finance Code Chapter 346 (which regulates certain revolving credit accounts) does not apply to this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.


_Robert E. Proeber_ _____    (Seal)
ROBERT E. PROEBER                                                 -Borrower

_____    (Seal)
                                                               -Borrower

_____    (Seal)
                                                               -Borrower

_____    (Seal)
                                                               -Borrower

0000224

**Document Number**

**ADUJUSTABLE RATE HOME
EQUITY CONVERSION
MORTGAGE**
Title of Document

DOC # 2056490
Recorded
OCT. 28, 2005 AT 09:52:03AM

*James A. Ladwig*

JAMES A LADWIG
RACINE COUNTY
REGISTER OF DEEDS
Fee Amount: $29.00

|||||||||||||||||||||||||||||||||||||||||

Record this document with the Register of Deeds

Name and Return Address:
Wells Fargo Bank
1000 Blue Gentian Rd
Eagan, MN 55121
P-32660

004-04-23-29-034-000
(Parcel Identification Number)

29/

- INFO-PRO    (800)655-2021    www.infoproforms.com

**Exhibit B**

0000225

# ADJUSTABLE RATE HOME
# EQUITY CONVERSION
# MORTGAGE

RECORD AND RETURN TO:
WELLS FARGO BANK, N. A.
1080 BLUE GENTIAN ROAD
EAGAN, MN 55121

Parcel ID Number:

--------------------------- [Space Above This Line For Recording Data] ---------------------------

State of Wisconsin
FHA Case No. 591-2705571-952/255
0060006046

THIS MORTGAGE ("Security Instrument") is given on OCTOBER 24, 2005 . The mortgagor is
ROBERT E. PROEBER

whose address is 1812 WIND DALE ROAD,
RACINE, WISCONSIN 53402                                                    ("Borrower").
This Security Instrument is given to
WELLS FARGO BANK, N. A.
                                                                   , which is
organized and existing under the laws of THE UNITED STATES OF AMERICA    , and whose address is
P.O. BOX 10304, DES MOINES, IOWA 50306-0304
                                               ("Lender"). Borrower has agreed to repay to Lender
amounts which Lender is obligated to advance, including future advances, under the terms of a Home Equity
Conversion Loan Agreement dated the same date as this Security Instrument ("Loan Agreement"). The agreement
to repay is evidenced by Borrower's Note dated the same date as this Security Instrument ("Note"). This Security
Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest at a rate subject
to adjustment, and all renewals, extensions and modifications of the Note, up to a maximum principal amount of
TWO HUNDRED THIRTY TWO THOUSAND FIVE HUNDRED AND 00/100 - - - - - - - - - - - - - - - - - - - - - -
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
(U.S. $   232,500.00        ); (b) the payment of all other sums, with interest, advanced under Paragraph 5 to
protect the security of this Security Instrument or otherwise due under the terms of this Security Instrument; and
(c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. The
full debt, including amounts described in (a), (b), and (c) above, if not paid earlier, is due and payable on
APRIL 28        , 2077 . For this purpose, Borrower does hereby mortgage, grant and convey to Lender,
with power of sale,  the following described property located in RACINE                         County,
Wisconsin:

*ReP*

X036 : 0202                                    Page 1

Case 2:18-cv-00687-JPS   Filed 05/02/18   Page 2 of 10   Document 1-2

0000226

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF

which has the address of **1812 WIND DALE ROAD**

[Street]

**RACINE** , **WISCONSIN** 53402 ("Property Address");

[City] [State] [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note.

2. **Payment of Property Charges.** Borrower shall pay all property charges consisting of taxes, ground rents, flood and hazard insurance premiums, and special assessments in a timely manner, and shall provide evidence of payment to Lender, unless Lender pays property charges by withholding funds from monthly payments due to the Borrower or by charging such payments to a line of credit as provided for in the Loan Agreement.

3. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire. This insurance shall be maintained in the amounts, to the extent and for the periods required by Lender or the Secretary of Housing and Urban Development ("Secretary"). Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss to Lender instead of to Borrower and to Lender jointly. Insurance proceeds shall be applied to restoration or repair of the damaged Property, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be

00XA : 02/02 Page 2

*R & P*

lessened, the insurance proceeds shall be applied first to the reduction of any indebtedness under a Second Note and Second Security Instrument held by the Secretary on the Property and then to the reduction of the Indebtedness under the Note and this Security Instrument. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the Indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

4. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds. Borrower shall occupy, establish, and use the Property as Borrower's principal residence after the execution of this Security Instrument, and Borrower (or at least one Borrower, if initially more than one person are Borrowers) shall continue to occupy the Property as Borrower's principal residence for the term of the Security Instrument. "Principal residence" shall have the same meaning as in the Loan Agreement.

Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

5. Charges to Borrower and Protection of Lender's Rights in the Property. Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments. Borrower shall promptly discharge any lien which has priority over this Security Instrument in the manner provided in Paragraph 12(c).

If Borrower fails to make these payments or the property charges required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

To protect Lender's security in the Property, Lender shall advance and charge to Borrower all amounts due to the Secretary for the Mortgage Insurance Premium as defined in the Loan Agreement as well as all sums due to the loan servicer for servicing activities as defined in the Loan Agreement. Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower as provided for in the Loan Agreement and shall be secured by this Security Instrument.

6. Inspection. Lender or its agent may enter on, inspect or make appraisals of the Property in a reasonable manner and at reasonable times provided that Lender shall give the Borrower notice prior to any inspection or appraisal specifying a purpose for the inspection or appraisal which must be related to Lender's interest in the Property. If the property is vacant or abandoned or the loan is in default, Lender may take reasonable action to protect and preserve such vacant or abandoned Property without notice to the Borrower.

7. Condemnation. The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation shall be paid to Lender. The proceeds shall be applied first to the reduction of any indebtedness under a Second Note and Second Security Instrument held by the Secretary on the Property, and then to the reduction of the indebtedness under the Note and this Security Instrument. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

03XA·02/02·                                                    Page 3

REP

0000228

8. **Fees.** Lender may collect fees and charges authorized by the Secretary.

9. **Grounds for Acceleration of Debt.**

(a) **Due and Payable.** Lender may require immediate payment in full of all sums secured by this Security Instrument if:

(i) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower; or

(ii) All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains title to the Property in fee simple or retains a leasehold under a lease for less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower or retains a life estate (or retaining a beneficial interest in a trust with such an interest in the Property).

(b) **Due and Payable with Secretary Approval.** Lender may require immediate payment in full of all sums secured by this Security Instrument, upon approval of the Secretary, if:

(i) The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower; or

(ii) For a period of longer than twelve (12) consecutive months, a Borrower fails to occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or

(iii) An obligation of the Borrower under this Security Instrument is not performed.

(c) **Notice to Lender.** Borrower shall notify Lender whenever any of the events listed in this Paragraph (a) (ii) or (b) occur.

(d) **Notice to Secretary and Borrower.** Lender shall notify the Secretary and Borrower whenever the loan becomes due and payable under Paragraph 9 (a) (ii) or (b). Lender shall not have the right to commence foreclosure until Borrower has had thirty (30) days after notice to either:

(i) Correct the matter which resulted in the Security Instrument coming due and payable; or

(ii) Pay the balance in full; or

(iii) Sell the Property for the lesser of the balance or 95% of the appraised value and apply the net proceeds of the sale toward the balance; or

(iv) Provide the Lender with a deed in lieu of foreclosure.

(e) **Trusts.** Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interests in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph 9. A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph 9.

(f) **Mortgage Not Insured.** Borrower agrees that should this Security Instrument and the Note not be eligible for insurance under the National Housing Act within SIXTY DAYS from the date hereof, if permitted by applicable law Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to SIXTY DAYS from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. **No Deficiency Judgments.** Borrower shall have no personal liability for payment of the debt secured by this Security Instrument. Lender may enforce the debt only through sale of the Property. Lender shall not be permitted to obtain a deficiency judgment against Borrower if the Security Instrument is foreclosed. If this Security Instrument is assigned to the Secretary upon demand by the Secretary, Borrower shall not be liable for any difference between the mortgage insurance benefits paid to Lender and the outstanding indebtedness, including accrued interest, owed by Borrower at the time of the assignment.

11. **Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full. This right applies even after foreclosure proceedings are instituted. To reinstate this Security Instrument, Borrower shall correct the condition which resulted in the requirement for immediate payment in full. Foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure

REP

0000229

proceeding shall be added to the principal balance. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the Security Instrument.

**12. Lien Status.**

(a) Modification. Borrower agrees to extend this Security Instrument in accordance with this Paragraph 12(a). If Lender determines that the original lien status of the Security Instrument is jeopardized under state law (including but not limited to situations where the amount secured by the Security Instrument equals or exceeds the maximum principal amount stated or the maximum period under which loan advances retain the same lien priority initially granted to loan advances has expired) and state law permits the original lien status to be maintained for future loan advances through the execution and recordation of one or more documents, then Lender shall obtain title evidence at Borrower's expense. If the title evidence indicates that the Property is not encumbered by any liens (except this Security Instrument, the Second Security Instrument described in Paragraph 13(a) and any subordinate liens that the Lender determines will also be subordinate to any future loan advances), Lender shall request the Borrower to execute any documents necessary to protect the lien status of future loan advances. Borrower agrees to execute such documents. If state law does not permit the original lien status to be extended to future loan advances, Borrower will be deemed to have failed to have performed an obligation under this Security Instrument.

(b) Tax Deferral Programs. Borrower shall not participate in a real estate tax deferral program, if any liens created by the tax deferral are not subordinate to this Security Instrument.

(c) Prior Liens. Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien or forfeiture of any part of the Property; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to all amounts secured by this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**13. Relationship to Second Security Instrument.**

(a) Second Security Instrument. In order to secure payments which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to execute a Second Note and a Second Security Instrument on the Property.

(b) Relationship of First and Second Security Instruments. Payments made by the Secretary shall not be included in the debt under the Note unless:

(i) This Security Instrument is assigned to the Secretary; or

(ii) The Secretary accepts reimbursement by the Lender for all payments made by the Secretary.

If the circumstances described in (i) or (ii) occur, then all payments by the Secretary, including interest on the payments, but excluding late charges paid by the Secretary, shall be included in the debt under the Note.

(c) Effect on Borrower. Where there is no assignment or reimbursement as described in (b)(i) or (ii) and the Secretary makes payments to Borrower, then Borrower shall not:

(i) Be required to pay amounts owed under the Note, or pay any rents and revenues of the Property under Paragraph 19 to Lender or a receiver of the Property, until the Secretary has required payment in full of all outstanding principal and accrued interest under the Second Note; or

(ii) Be obligated to pay interest or shared appreciation under the Note at any time, whether accrued before or after the payments by the Secretary, and whether or not accrued interest has been included in the principal balance under the Note.

06XA : 02/02                                    Page 5



0000230

(d) **No Duty of the Secretary.** The Secretary has no duty to Lender to enforce covenants of the Second Security Instrument or to take actions to preserve the value of the Property, even though Lender may be unable to collect amounts owed under the Note because of restrictions in this Paragraph 13.

14. **Forbearance by Lender Not a Waiver.** Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

15. **Successors and Assigns Bound; Joint and Several Liability.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender. Borrower may not assign any rights or obligations under this Security Instrument or under the Note, except to a trust that meets the requirements of the Secretary. Borrower's covenants and agreements shall be joint and several.

16. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address all Borrowers jointly designate. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this Paragraph 16.

17. **Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

18. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and this Security Instrument.

NON-UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

19. **Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by this Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 19.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by this Security Instrument is paid in full.

20. **Foreclosure Procedure.** If Lender requires immediate payment in full under Paragraph 9, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 20, including but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give notice of sale in the manner prescribed by applicable law to Borrower and to the other persons prescribed by applicable law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by applicable law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums

XX07 : 02/02                                                   Page 6

REP

0000231

secured by this Security Instrument; and (c) any excess to the clerk of the circuit court of the county in which the sale is held.

21. Lien Priority. The full amount secured by this Security Instrument shall have the same priority over any other liens on the Property as if the full amount had been disbursed on the date the initial disbursement was made, regardless of the actual date of any disbursement. The amount secured by this Security Instrument shall include all direct payments by Lender to Borrower and all other loan advances permitted by this Security Instrument for any purpose. This lien priority shall apply notwithstanding any State constitution, law or regulation, except that this lien priority shall not affect the priority of any liens for unpaid State or local governmental unit special assessments or taxes.

22. Adjustable Rate Feature. Under the Note, the initial stated interest rate of 5.6400 % which accrues on the unpaid principal balance ("Initial Interest Rate") is subject to change, as described below. When the interest rate changes, the new adjusted interest rate will be applied to the total outstanding principal balance. Each adjustment to the interest rate will be based upon the weekly average yield on United States Treasury Securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board in Statistical Release H.15 (519) ("Index") plus a margin. If the Index is no longer available, Lender will use a new Index any index prescribed by the Secretary. Lender will give Borrower notice of the new Index.

Lender will perform the calculations described below to determine the new adjusted interest rate. The interest rate may change on the first day of JANUARY, 2006 , and on [ ] that day of each succeeding year ☒ the first day of each succeeding month ("Change Date") until the loan is repaid in full.

The value of the Index will be determined, using the most recent Index figure available thirty (30) days before the Change Date ("Current Index"). Before each Change Date, the new interest rate will be calculated by adding a margin to the Current Index. The sum of the margin plus the Current Index will be called the "Calculated Interest Rate" for each Change Date. The Calculated Interest Rate will be compared to the interest rate in effect immediately prior to the current Change Date (the "Existing Interest Rate").

[ ] (Annually Adjusting Variable Rate Feature) The Calculated Interest Rate cannot be more than 2.0% higher or lower than the Existing Interest Rate, nor can it be more than 5.0% higher or lower than the Initial Interest Rate.

☒ (Monthly Adjusting Variable Rate Feature) The Calculated Interest Rate will never increase above FIFTEEN AND 640/1000 percent ( 15.6400 %).

The Calculated Interest Rate will be adjusted if necessary to comply with these rate limitation(s) and will be in effect until the next Change Date. At any Change Date, if the Calculated Interest Rate equals the Existing Interest Rate, the interest rate will not change.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

24. Accelerated Redemption Periods. If (a) the Property is 20 acres or less in size, (b) Lender in an action to foreclose this Security Instrument waives all right to a judgment for deficiency and (c) Lender consents to Borrower's remaining in possession of the Property, then the sale of the Property may be 6 months from the date the judgment is entered if the Property is owner-occupied at the time of the commencement of the foreclosure action. If conditions (b) and (c) above are met and the Property is not owner-occupied at the time of the commencement of the foreclosure action, then the sale of the Property may be 3 months from the date the judgment is entered. In any event, if the Property has been abandoned, then the sale of the Property may be 2 months from the date the judgment is entered.

25. Attorneys' Fees. If this Security Instrument is subject to Chapter 428 of the Wisconsin Statutes, "reasonable attorneys' fees" shall mean only those attorneys' fees allowed by that Chapter.

26. Obligatory Loan Advances. Lender's responsibility to make Loan Advances under the terms of the Loan Agreement, including Loan Advances of principal to Borrower as well as Loan Advances for interest, MIP, Servicing Fees and other charges, shall be obligatory.

XD36 . 02/02                                          Page 7

REP

0000232

0060006046

27. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es).]

☐ Condominium Rider ☐ Shared Appreciation Rider ☐ Planned Unit Development Rider
☐ Other (Specify)

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_Robert E Proeber_                                                      (Seal)
ROBERT E. PROEBER                                                      -Borrower

_____                                      (Seal)
                                                                       -Borrower

——————————— [Space Below This Line For Acknowledgment] ———————————

State of WISCONSIN

County of RACINE

This instrument was acknowledged before me this 24th October 2005, by

ROBERT E PROEGER

Marc
Batkovich

Notary Public MARC BATKOVICH
My Commission Expires: 2-5-2007

Drafted by; RICK AIKERS

ND39 1 01/05                          Page 9

0000233

Lot 14, Block 4, Wind-dale Subdivision No. 2, according to the recorded plat thereof. Said land being in the Town of Caledonia, County of Racine and State of Wisconsin.

For Reference Only: Tax Key No. 004-04-23-29-054-000
Address:     1812 Wind Dale Drive
                  Racine, WI 53402

**ASSIGNMENT of MORTGAGE AND OTHER LOAN DOCUMENTS**

PREPARED BY: SLS
RECORDING REQUESTED BY
/AFTER RECORDING RETURN TO:

Stewart Lender Services
Attn: Maude Le Blanc
9700 Bissonnet St., Suite 1500
Houston, TX 77036
Phone 832-308-6858

TYSON FETTES
RACINE COUNTY
REGISTER OF DEEDS
Fee Amount: $30.00
Pages: 1

Parcel ID Number:
PIN#: 004-04-23-29-054-000

Job Number: 465_2901          Loan Number: 0060008046          FHA Loan No: 551-2705571

WELLS FARGO BANK, N.A., whose address is ONE HOME CAMPUS, DES MOINES, IA 50328 ("Assignor"), in consideration of Ten Dollars ($10.00) and other good and valuable consideration received by Assignor, hereby assigns, transfers, sets over and conveys to THE SECRETARY OF HOUSING AND URBAN DEVELOPMENT, whose address is 451 7TH STREET, S.W., WASHINGTON, D.C. 20410 ("Assignee"), and his/her successors and assigns, without recourse, the following:

1.    that certain Mortgage dated 10/24/2005, and recorded on 10/28/2005, Instrument/Document No. 2056490, , among the land records of Racine County, Wisconsin, as amended or modified (the Mortgage), which Mortgage secures that certain promissory note dated 10/24/2005 (the "Note"); and

Borrower:   ROBERT E. PROEBER
Recording Ref:   Recorded on 10/28/2005, Instrument/Document No. 2056490, , Date of Mortgage 10/24/2005
Original Beneficiary:   WELLS FARGO BANK, N.A

2.    .. such other documents, agreements, instruments and other collateral that evidence, secure or otherwise relate to Assignor's right, title or interest in and to the Mortgage and/or the Note, including without limitation the title insurance policies and hazard insurance policies that might presently be in effect.

LOT 14, BLOCK 4, WIND-DALE SUBDIVISION NO. 2, ACCORDING TO THE RECORDED PLAT THEREOF, SAID LAND BEING IN THE TOWN OF CALEDONIA, COUNTY OF RACINE AND STATE OF WISCONSIN.
PIN#: 004-04-23-29-054-000

TO HAVE AND TO HOLD unto Assignee and its successors and assigns forever.

IN WITNESS WHEREOF, Assignor has caused this Assignment to be executed and delivered by its duly authorized officer as of the 29 day of May , 2013.

WELLS FARGO BANK, N.A.

By: *Kathy McCauley*

KATHY McCAULEY
Vice President Loan Documentation

STATE OF IOWA          ACKNOWLEDGMENT
COUNTY OF DALLAS
On this the 29 day of May , 2013 before me, a Notary Public, appeared Kathy McCauley to me personally known, who being by me duly sworn, did say that she is the VICE PRESIDENT of Loan Documentation of WELLS FARGO BANK, N.A., and that said instrument was signed on behalf of said corporation by authority of its Board of Directors, and said Vice President Loan Doc acknowledged said instrument to be the free act and deed of said corporation.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year first above written.

This instrument was drafted by:
STEWART LENDER SERVICES

*Maude Le Blanc*
MAUDE LE BLANC
9700 Bissonnet St., Suite 1500
Houston, Texas 77036

*Laura Allen*
Notary Public
My commission expires 1/4/14

LAURA ALLEN
Commission Number 744116
My Commission Expires
January 4, 2014

0000234

**ADJUSTABLE RATE HOME
EQUITY CONVERSION SECOND
MORTGAGE**
Title of Document

DOC # 2056491
Recorded
OCT. 28,2003 AT 09:52:00AM

*James A. Ladwig*

JAMES A LADWIG
RACINE COUNTY
REGISTER OF DEEDS
Fee Amount: $23.00

Record this document with the Register of Deeds

Name and Return Address:
Wells Fargo Bank, NA
1000 Blue Gentian Rd
Eagan, MN 55121
P-3060

021-01-03-39-051-000
(Parcel Identification Number)

29

INFO-PRO (800)656-3021 www.infoproforms.com

**Exhibit D**

# ADJUSTABLE RATE SECOND NOTE
## (HOME EQUITY CONVERSION)

FHA Case No. 581-2705571-952/255
0060006046

**OCTOBER 24** , 2005

**1812 WIND DALE ROAD, RACINE, WISCONSIN 53402**
[Property Address]

RECEIVED
JAN 2 3 2006

## 1. DEFINITIONS
"Borrower" means each person signing at the end of this Note. "Secretary" or "Lender" means the Secretary of Housing and Urban Development or his or her authorized representatives.

## 2. BORROWER'S PROMISE TO PAY; INTEREST
In return for amounts to be advanced by Lender to or for the benefit of Borrower under the terms of a Home Equity Conversion Loan Agreement dated **OCTOBER 24, 2005** ("Loan Agreement"), Borrower promises to pay to the order of Lender a principal amount equal to the sum of all Loan Advances made under the Loan Agreement with interest. All amounts advanced by Lender, plus interest, if not paid earlier, are due and payable on **APRIL 28** , **2077** . Interest will be charged on unpaid principal at the rate of **FIVE AND 640/1000** percent ( **5.6400** %) per year until the full amount of principal has been paid. The interest rate may change in accordance with Paragraph 5 of this Note. Accrued interest shall be added to the principal balance as a Loan Advance at the end of each month. Solely for the purpose of calculating interest, a payment received by Lender within 30 days prior to or after the date it is due will be deemed to be paid on such due date.

## 3. PROMISE TO PAY SECURED
Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument" or "Second Security Instrument." That Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note. Borrower also executed a First Security Instrument and First Note when the Second Security Instrument and this Note were executed.

## 4. MANNER OF PAYMENT
### (A) Time
Borrower shall pay all outstanding principal and accrued interest to Lender upon receipt of a notice by Lender requiring immediate payment in full, as provided in Paragraph 7 of this Note.
### (B) Place
Payment shall be made at the Office of the Housing-FHA Comptroller, Director of Mortgage Insurance Accounting and Servicing, 451 7th Street, S.W., Washington, DC 20410, or any such other place as Lender may designate in writing by notice to Borrower.
### (C) Limitation of Liability
Borrower shall have no personal liability for payment of the debt. Lender shall enforce the debt only through sale of the Property covered by the Security Instrument ("Property").

## 5. INTEREST RATE CHANGES
### (A) Change Date
The interest rate may change on the first day of **JANUARY, 2006** , and on ☐ that day of each succeeding year ☒ the first day of each succeeding month. "Change Date" means each date on which the interest rate could change.
### (B) The Index
Beginning with the first Change Date, the interest rate will be based on an Index. "Index" means the weekly average yield on United States Treasury Securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. "Current Index" means the most recent Index figure available 30 days before the Change Date. If the Index (as defined above) is no longer available, Lender will use as a new Index any index prescribed by the Secretary. Lender will give Borrower notice of the new Index.
### (C) Calculation of Interest Rate Changes
Before each Change Date, Lender will calculate a new interest rate by adding a margin of **ONE AND 500/1000** percentage points ( **1.50000** %) to the Current Index. Subject to the limits stated in Paragraph 5(D) of this Note, this amount will be the new interest rate until the next Change Date.
### (D) Limits on Interest Rate Changes
☐ The interest rate will never increase or decrease by more than two percentage points (2.0%) on any single Change Date. The interest rate will never be more than five percentage points (5.0%) higher or lower than the initial interest rate stated in Paragraph 2 of this Note.
☒ The interest rate will never increase above **FIFTEEN AND 640/1000** percent ( **15.64000** %).
### (E) Notice of Changes
Lender will give notice to Borrower of any change in the interest rate. The notice must be given at least 25 days before the new interest rate takes effect, and must set forth (i) the date of the notice, (ii) the Change Date, (iii) the old interest rate, (iv) the new interest rate, (v) the Current Index and the date it was published, (vi) the method of calculating the adjusted interest rate, and (vii) any other information which may be required by law from time to time.

*581-2705571*

Case 2:18-cv-00687-JPS   Filed 05/02/18   Page 2 of 4   Document 1-4

**(F) Effective Date of Changes**

A new interest rate calculated in accordance with paragraphs 5(C) and 5(D) of this Note will become effective on the Change Date, unless the Change Date occurs less than 25 days after Lender has given the required notice. If the interest rate calculated in accordance with Paragraphs 5(C) and 5(D) of this Note decreased, but Lender failed to give timely notice of the decrease and applied a higher rate than the rate which should have been stated in a timely notice, then Lender shall recalculate the principal balance owed under this Note so it does not reflect any excessive interest.

## 6. BORROWER'S RIGHT TO PREPAY

A Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty. Any amount of debt prepaid will first be applied to reduce the principal balance of this Note and then to reduce the principal balance of the First Note.

All prepayments of the principal balance shall be applied by Lender as follows:

First, to that portion of the principal balance representing aggregate payments for mortgage insurance premiums;

Second, to that portion of the principal balance representing aggregate payments for servicing fees;

Third, to that portion of the principal balance representing accrued interest due under the Note; and

Fourth, to the remaining portion of the principal balance. A Borrower may specify whether a prepayment is to be credited to that portion of the principal balance representing monthly payments or the line of credit. If Borrower does not designate which portion of the principal balance is to be prepaid, Lender shall apply any partial prepayments to an existing line of credit or create a new line of credit.

## 7. IMMEDIATE PAYMENT IN FULL

**(A) Death or Sale**

Lender may require immediate payment in full of all outstanding principal and accrued interest if:

(i) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower, or

(ii) All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains title to the Property in fee simple or retains a leasehold under a lease for less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower or retains a life estate (or retaining a beneficial interest in a trust with such an interest in the Property).

**(B) Other Grounds**

Lender may require immediate payment in full of all outstanding principal and accrued interest, upon approval by an authorized representative of the Secretary, if:

(i) The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower;

(ii) For a period of longer than 12 consecutive months, a Borrower fails to physically occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or

(iii) An obligation of the Borrower under the Security Instrument is not performed.

**(C) Payment of Costs and Expenses**

If Lender has required immediate payment in full as described above, the debt enforced through sale of the Property may include costs and expenses, including reasonable and customary attorneys' fees, associated with enforcement of this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**(D) Trusts**

Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interests in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph. A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph.

## 8. WAIVERS

Borrower waives the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 9. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the Property Address above or at a different address if Borrower has given the Secretary a notice of Borrower's different address.

Any notice that must be given to the Secretary under this Note will be given by first class mail to the HUD Field Office with jurisdiction over the Property or at any other address designated by the Secretary.

## 10. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note only through sale of the Property.

## 11. RELATIONSHIP TO FIRST NOTE

**(A) Second Note**

Because Borrower will be required to repay amounts which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to grant this Note to the Secretary.

**(B) Relationship of Secretary Payments to First Note**

Payments made by the Secretary shall be included in the debt due under this Note unless:

(i) The First Note is assigned to the Secretary; or

(ii) The Secretary accepts reimbursements by the Lender for all payments made by the Secretary.

If the circumstances described in (i) or (ii) occur, then all payments by the Secretary, including interest on the payments, shall be included in the debt under the First Note.

**(C) Notice of Interest Rate Adjustments**

Borrower agrees that as long as the holder of the First Note continues to make Loan Advances, any notice of interest rate adjustment given to Borrower under Paragraph 5(E) of the First Note shall also be considered to be notice to Borrower under Paragraph 5(E) of this Note, so that the same interest rate shall apply for the First Note and this Note.

**12. SHARED APPRECIATION**

If Borrower has executed a Shared Appreciation Allonge, the covenants of the Allonge shall be incorporated into and supplement the covenants of this Note as if the Allonge were a part of this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_Robert E. Proeber_ _____ (Seal)
**ROBERT E. PROEBER**                                     -Borrower

_____ (Seal)
                                                          -Borrower

_____ (Seal)
                                                          -Borrower

_____ (Seal)
                                                          -Borrower

0000235

# ADJUSTABLE RATE HOME
# EQUITY CONVERSION
# SECOND MORTGAGE

RECORD AND RETURN TO:
WELLS FARGO BANK, N. A.
1000 BLUE GENTIAN ROAD
EAGAN, MN 55121

Parcel ID Number:

--------------------------------- [Space Above This Line For Recording Data] ---------------------------------

State of Wisconsin                                    FHA Case No. 501-2705571-952/255
                                                              0060906044

THIS MORTGAGE ("Security Instrument" or "Second Security Instrument") is given on
OCTOBER 24, 2005        . The mortgagor is
ROBERT R. PROXBER

whose address is    1812 WIND DALE ROAD,
RACINE, WISCONSIN 53402                                     ("Borrower"). This Security Instrument is given
to the Secretary of Housing and Urban Development, whose address is 451 Seventh Street, S.W., Washington, DC
20410 ("Lender" or "Secretary"). Borrower has agreed to repay to Lender amounts which Lender is obligated to
advance, including future advances, under the terms of a Home Equity Conversion Loan Agreement dated the
same date as this Security Instrument ("Loan Agreement"). The agreement to repay is evidenced by Borrower's
Note dated the same date as this Security Instrument ("Second Note"). This Security Instrument secures to
Lender: (a) the repayment of the debt evidenced by the Second Note, with interest, at a rate subject to adjustment,
and all renewals, extensions and modifications of the Note, up to a maximum principal amount of
TWO HUNDRED THIRTY TWO THOUSAND FIVE HUNDRED AND 00/00 . . . . . . . . . . . . . . . . . . . . . . .
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
(U.S. $   232,500.00      ), (b) the payment of all other sums, with interest, advanced under Paragraph 5 to
protect the security of this Security Instrument or otherwise due under the terms of this Security Instrument; and
(c) the performance of Borrower's covenants and agreements under this Security Instrument and the Second Note.
The full debt, including amounts described in (a), (b), and (c) above, if not paid earlier, is due and payable on
APRIL 18        , 2077 . For this purpose, Borrower does hereby mortgage, grant and convey to Lender,
with power of sale,  the following described property located in RACINE                        County,
Wisconsin:

X040:0507                               Page 1

**Exhibit E**

0000242

0060006066

27. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es).]

☐ Condominium Rider    ☐ Shared Appreciation Rider    ☐ Planned Unit Development Rider
☐ Other (Specify)

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_____ (Seal)
ROBERT E. PROEGER                     -Borrower

_____ (Seal)
                                   -Borrower

───────── [Space Below This Line For Acknowledgment] ─────────

State of WISCONSIN

County of RACINE

This instrument was acknowledged before me this 28ᵗʰ day of September

ROBERT E PROEGER

Notary Public   MARC BALKOVICH
My Commission Expires: 8-5-2007

Drafted by: Rick Arkers

Page 6

XD4118143

0000243

Lot 14, Block 4, Wind-dale Subdivision No. 2, according to the recorded plat thereof. Said land being in the Town of Caledonia, County of Racine and State of Wisconsin.

For Reference Only: Tax Key No. 004-04-23-29-054-000
Address:   1812 Wind Dale Drive
Racine, WI 53402

WARNING IT IS A FELONY TO COPY OR REPRODUCE THIS CERTIFICATE - STATE STATUTE 69.24(1)

# WISCONSIN CERTIFICATE OF VITAL RECORD

**STATE OF WISCONSIN**
DEPARTMENT OF HEALTH SERVICES
ORIGINAL CERTIFICATE OF DEATH

STATE FILE DATE: MARCH 20, 2014
STATE FILE NUMBER: 2014010312

## FACT OF DEATH

| 1. DECEDENT'S NAME | | | 2. SOCIAL SECURITY NUMBER | 3. DATE PRONOUNCED DEAD |
|---|---|---|---|---|
| First ROBERT | Middle EUGENE | Last PROEBER | | MARCH 06, 2014 |

| 4. TIME PRONOUNCED DEAD (24hr) 2345 | 5. AGE 86 YEARS | 6. DATE OF BIRTH APRIL 28, 1927 | 7. SEX MALE | 8. CITY, VILLAGE, OR TOWNSHIP OF DEATH RACINE (CITY) | 9. COUNTY OF DEATH RACINE |

| 10. PLACE OF DEATH HOSPITAL - HOSPICE CARE | 11. FACILITY NAME AND ADDRESS (street) WHEATON FRANCISCAN HOSPICE WHEATON FRANCISCAN HEALTHCARE-ALL SAINTS, 3801 SPRING ST |

| 12. RESIDENCE ADDRESS 1812 WIND DALE DRIVE | 13. RESIDENCE CITY, VILLAGE, OR TOWNSHIP CALEDONIA (VILLAGE) | 14. RESIDENCE COUNTY RACINE | 15. RESIDENCE STATE WISCONSIN |

| 16. MARITAL STATUS WIDOWED | 17. IN DOMESTIC PARTNERSHIP NO | 18. SURVIVING SPOUSE'S BIRTH NAME | 19. STATE OF BIRTH WISCONSIN | 20. DECEDENT'S BIRTH LAST NAME PROEBER |

| 21. FATHER'S BIRTH NAME WILLIAM J PROEBER | 22. MOTHER'S BIRTH NAME ELLA C ERBE |

| 23. INFORMANT'S NAME ROBERT ALAN PROEBER | 24. INFORMANT'S MAILING ADDRESS 1445 MARTHA AVENUE, MOUNT PLEASANT, WI 53406 |

| 25. NAME AND ADDRESS OF FUNERAL FACILITY PURATH-STRAND FUNERAL HOME, 3915 DOUGLAS AVE, RACINE, WI 53402 | 26. FUNERAL DIRECTOR'S NAME STRAND, GARY L |

| 27. DATE SIGNED MARCH 19, 2014 |

| 28. MANNER OF DEATH NATURAL | 29. TYPE OF MEDICAL CERTIFIER PHYSICIAN | 30. MEDICAL CERTIFIER'S NAME AND TITLE SUBBANNA JAYAPRAKASH, MD |

| 31. DATE SIGNED MARCH 19, 2014 |

| 32. DATE OF DEATH MARCH 06, 2014 | 33. TIME OF DEATH (24hr) 23:45 | 34. MEDICAL CERTIFIER'S MAILING ADDRESS 3811 SPRING STREET, RACINE, WI 53405 |

## EXTENDED FACT OF DEATH

| 35. USUAL OCCUPATION LITHOGRAPH SUPERVISOR | 36. KIND OF BUSINESS/INDUSTRY PRINTING/RELATED ACTIVITIES | 37. EVER IN US ARMED FORCES YES | 38. DECEDENT TRIBAL MEMBER NO | TRIBE NAME(S): |

| 39. METHOD OF DISPOSITION BURIAL | 40. PLACE AND LOCATION OF DISPOSITION WEST LAWN MEMORIAL PARK, MOUNT PLEASANT, WISCONSIN |

**41. PART I.** The conditions listed are the diseases, injuries, or complications that caused death. Conditions leading to the immediate cause death, Conditions leading to the immediate cause are listed sequentially and the underlying cause is listed last.

| | | Interval Between Onset and Death |
|---|---|---|
| Immediate Cause (a) | CARDIAC ARREST | MINUTES |
| Due to or as a consequence of: (b) | VENTRICULAR FIBRILLATION | MINUTES |
| Due to or as a consequence of: (c) | ESTABLISHED CARDIAC ARRHYTHMIA | TWO MONTHS |
| Due to or as a consequence of (d) | ISCHEMIC CARDIOMYOPATHY | YEARS |

**41. PART II.** OTHER SIGNIFICANT CONDITIONS contributing to death but not resulting in the underlying cause given in Part I.  COR PULMONALE, COPD, ATRIAL FIBRILLATION, NON SUSTAINED VENTRICULAR TACHYCARDIA

| 42. AUTOPSY PERFORMED NO | 43. DATE OF INJURY | 44. TIME OF INJURY (24hr) | 45. INJURY AT WORK | 46. PLACE OF INJURY |

| 47. LOCATION OF INJURY | 48. COUNTY OF INJURY |

| 49. IF INJURY STATED ANYWHERE IN CAUSE OF DEATH (Part I or Part II), DESCRIBE HOW IT OCCURRED. |

**NO AMENDMENTS PRESENT**

I certify that this document contains a true and correct reproduction
of facts on file with the Wisconsin Vital Records Office.

1050019

13811654

_TYSON FETTES_
RACINE COUNTY REGISTER OF DEEDS

Date Issued: MARCH 20, 2014

WARNING IT IS A FELONY TO COPY OR REPRODUCE THIS CERTIFICATE - STATE STATUTE 69.24(1)

**Exhibit F**

# Statement of Account

**U.S. Department of Housing and Urban Development**
Office of Finance and Accounting

| HUD Field Office |
| --- |

| To HUD/OFFICE OF GENERAL COUNSEL | 1. FHA Case Number<br>581-2705571 | 2. Account Number<br>581-2705571 |
| --- | --- | --- |
| | 3. Mortgagor/Owner<br>ROBERT E PROEBER | 4. Social Security Number<br>XXX-XX-4623 |
| | 5. Co-Mortgagor | 6. Social Security Number |
| 7. Name of original mortgagor if different from above | 8. Property Address<br>1812 WIND DALE RD<br>RACINE, WI 53402 | |

## Part 1. General Account Information

| Original Mortgage Amount | Unpaid Principal Balance<br>$120,093.97 | Escrow Balance | Interest Rate<br>3.12% | Term |
| --- | --- | --- | --- | --- |
| Type of mortgage<br>HECM | Last payment applied | Date | Date of oldest unpaid interest installment | |

| Type of Tax | Year | Amount | Date sent to RAD | Date Deducted from Account |
| --- | --- | --- | --- | --- |
| | | | | |
| | | | | |
| | | | | |

**Please Note:** The information provided may change subject to un-collectibles from previous owner or foreclosures of other costs incurred but not posted against the account.

## Part 2. Assumption Information / Bring Current Information

Other mortgage is to be assumed: 1. Remit certified funds to bring account current; 2. Provide a copy of the conveyance document; 3. Provide letter from seller authorizing transfer of escrow funds to buyer (no escrow funds will be refunded); 4. Provide verification of Hazard Insurance coverage.

| Bring Current Amount | |
| --- | --- |
| Principal | $120,093.97 |
| Interest | $42,817.45 |
| Tax Escrow Required | |
| Service Charge | $4,440.00 |
| Late Charge | |
| Tax Advance | |
| Other (specify) MIP | $11,611.69 |
| Interest on Advances | |
| Total to Bring Current as of: 01/17/2018 | $178,963.11 |
| Current Monthly Payment Principal and Interest | |
| Tax Escrow | |
| Service Charge | |
| Total Monthly Payment See back of page if mortgage is 235 | |

## Part 3. Payoff Information

| Principal Balance | $120,093.97 |
| --- | --- |
| Interest Due | $42,817.45 |
| Service Charge | $4,440.00 |
| Late Charge | |
| Returned Check Charge | |
| Advance Amount | |
| Tax Escrow Applied | |
| Other (specify) MIP | $11,611.69 |
| Interest on Advances | |
| Taxes Paid but Not Posted | |
| Total Payoff Amount as of: 01/17/2018 | $178,963.11 |
| Per Diem Service Charge | |
| Per Diem Interest | $17.75 |

| Prepared by<br>LAURA THONGKHAMTHANOME | Title<br>CASH ANALYST | Date<br>01/17/2018 |
| --- | --- | --- |

I hereby certify that the above is a true and correct statement of the unpaid balance due on the Note and Mortgage (or Deed of Trust) identified above and held by the Secretary of the U.S. Department of Housing and Urban Development.

**Warning:** HUD will prosecute false claims and statements. Conviction may result in criminal and/or civil penalties. (18 U.S.C. 1001, 1010, 1012; 31 U.S.C. 3729, 3802)

| Certified by<br>JENNIFER THOMPSON | Title<br>CASH MANAGEMENT | Date<br>1/17/2018 |
| --- | --- | --- |

form **HUD-698** (1/89)

**Exhibit G**

**Sensitive Information:** The information collected on this form is considered sensitive and is protected by the Privacy Act. The Privacy Act requires that these records be maintained with appropriate administrative, technical, and physical safeguards to ensure their security and confidentiality. In addition, these records should be protected against any anticipated threats or hazards to their security or integrity which could result in substantial harm, embarrassment, inconvenience, or unfairness to any individual on whom the information is maintained.

**If the Mortgage is receiving subsidy**

Anniversary date _____

Date of last recertification _____

Monthly subsidy _____

Mortgagor's payment _____

Full mortgage payment _____

---

**Affidavit as to Status of Account**

State of _Oklahoma_

County of _Oklahoma_

On this ___18___ day of (mm/yyyy) _01/2018_

personally appeared before me, the undersigned attesting officer, _Heather Campbell_ ,

who being sworn on oath, says that he/she is the _Loan Servicing Manager_

of the Department of Housing and Urban Development, a duly constituted agency of the United States of America, that he/she is duly authorized to make this affidavit; that the foregoing statement was prepared from the books and records of the Department of Housing and Urban Development on _01 18 2018_ , and that affidavit has cusody of the said books and records and to the best of his/her knowledge and belief the foregoing statement correctly reflects the status of the account as of _01/18/2018_ .

Sworn and Subscribed before me this ___18___ day of _01/2018_ .

Notary Public

```
EMMA SCOTT
Notary Public, State of Oklahoma
Commission # 14002585
My Commission Expires 03-17-2018
```

#14002585

form **HUD-698** (1/89)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

Place an "X" in the appropriate box: ☐ Green Bay Division ☐ Milwaukee Division

## I. (a) PLAINTIFFS

## DEFENDANTS

**(b)** County of Residence of First Listed Plaintiff
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1 U.S. Government Plaintiff

☐ 3 Federal Question *(U.S. Government Not a Party)*

☐ 2 U.S. Government Defendant

☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff)*
*(For Diversity Cases Only)* and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Mgmt. Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Med. Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 535 Death Penalty | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | ☐ 463 Habeas Corpus - Alien Detainee (Prisoner Petition) | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☐ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district *(specify)*
☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE

DOCKET NUMBER

DATE

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #

AMOUNT

APPLYING IFP

JUDGE

MAG. JUDGE

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I. **(a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II. **Jurisdiction**. The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

III. **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV. **Nature of Suit**. Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

V. **Origin**. Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

VI. **Cause of Action**. Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity**. Example: U.S. Civil Statute: 47 USC 553
Brief Description: Unauthorized reception of cable service

VII. **Requested in Complaint**. Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII. **Related Cases**. This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature**. Date and sign the civil cover sheet.